**EMPLOYERS INSURANCE COMPANY OF WAUSAU,**
Plaintiff,

v.

**AMERICAN RE–INSURANCE COMPANY, Defendant.**

No. 02–C–0491–S.

United States District Court, W.D. Wisconsin.

March 10, 2003.

Kendall W. Harrison, Madison, WI, for Plaintiff.

Jon G. Furlow, Michael Best & Freidrich, LLP, Madison, WI, for Defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff Employers Insurance Company of Wausau commenced this action to recover under a reinsurance certificate issued by defendant American Re–Insurance Company. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. The matter is presently before the Court on cross motions for summary judgment. The following facts are undisputed.

## FACTS

In 1985 plaintiff issued a $750,000 Excess Insurance Policy to the Tribune Company in exchange for a $500,000 premium. Subsequently, defendant issued a facultative reinsurance certificate to plaintiff whereby plaintiff ceded 80 percent or $600,000 of the potential liability on the Tribune policy to defendant in exchange for a $400,000 premium less a $100,000 ceding commission. The following general conditions were a part of defendant's reinsurance certificate:

1. The Reinsurer agrees to indemnify the Company against losses or damages which the Company is legally obligated to pay with respect to which insurance is afforded during the term of this Certificate under the policy reinsured, subject to the reinsurance limits and coverage shown in the Declarations. The Reinsurer shall not indemnify the Company for liability beyond circumscribed policy provisions, including but not limited to punitive, exemplary, consequential or compensatory damages resulting from an action of an insured or assignee against the Company....

....

3. The Reinsurer shall be liable for its proportion of allocated loss expenses incurred by the Company in the same ratio that the Reinsurer's share of the settlement of judgment bears to the total amount of such settlement or judgment under the policy reinsured. The term "allocated loss expense" means all expenses incurred in the investigation and settlement of claims or suits, including the salaries and expenses of staff adjusters but excluding other company salaries and office expenses. It also includes court costs and interest on any judgment or award provided the Reinsurer's prior consent to trial court proceedings has been obtained. Allocated loss expenses shall not include expenses incurred by the Company in regard to any actual or alleged liability that is not within the circumscribed provisions of the policy reinsured.

In 1992 Tribune was sued for environmental contamination. It brought a declaratory judgment action against plaintiff, among other insurers, seeking a determination that plaintiff had a duty to defend and indemnify it under the terms of plaintiff's policy. Plaintiff denied coverage and defended against the declaratory judgment action, ultimately settling the claim for $270,000. Plaintiff incurred legal expenses and costs of $531,062.28 defending against Tribune's declaratory judgment suit. Defendant paid plaintiff 80 percent of the $270,000 settlement amount but refused to pay any portion of the defense costs on the basis that such payment was not required by the reinsurance certificate.

## MEMORANDUM

Plaintiff contends that the declaratory judgment defense costs are "allocated loss expenses" within the meaning of paragraph 3 of the general conditions, for which defendant is 80 percent responsible.

Defendant contends that the last sentence of general condition 3 places declaratory judgment expenses outside the definition of allocated loss expenses. Each party argues that the unambiguous language of the reinsurance certificate favors its position and that it is entitled to summary judgment.

Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions and the Court has reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. A fact is material only if it might affect the outcome of the suit under the governing law. Disputes over unnecessary or irrelevant facts will not preclude summary judgement. A factual issue is genuine only if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

 Insurance policies are construed in the same manner as other contracts, the primary goal being to determine and give effect to the parties intentions. *Wisconsin Label Corp. v. Northbrook Property & Cas. Ins. Co.*, 2000 WI 26, ¶ 23, 233 Wis.2d 314, 607 N.W.2d 276 (2000). Unambiguous contracts are given their literal meaning. *Id.* at ¶ 24. Contracts which may reasonably be construed to have more than one meaning are interpreted against the drafter, particularly when the contract is a standard form supplied by the drafting party. *Id.* However, it is not for a court to redraft a policy and language should be given its plain meaning where possible in an effort to carry out the intent of the parties. *Id.* at ¶ 25.

 Applying these principles there can be no question that the language of the general conditions requires defendant to pay 80 percent of the declaratory judgment defense costs. The primary definition of "allocated loss expenses"—"all expenses incurred in the investigation and settlement of claims or suits"—encompasses expenses incurred in declaratory judgment actions attempting to avoid coverage for a claim. Defendant concedes as much at page 4 of its brief in opposition to plaintiff's summary judgment motion. The real issue is whether the parties intended the final sentence of paragraph 3 to restrict the basic definition by excluding declaratory judgment expenses. The language of the contract makes clear that they did not.

The most natural reading of the final sentence is that the parties intended to exclude from "allocated loss expenses" those costs incurred in the investigation and settlement of claims other than claims for coverage under the terms of the policy. By excluding from coverage "expenses incurred ... in regard to any actual or alleged liability that is *not* within the circumscribed provisions of the policy reinsured" the limitation includes expenses that are incurred in regard to alleged liability that *is* within the policy provisions. The expenses in dispute were incurred in regard to a claim alleged to be within the policy provision, namely the claim the policy covered environmental liability. Accordingly, the expenses are recoverable from defendant.

Any doubt that this was the intent of the parties is removed by consideration of the following parallel provision in paragraph 1: "The Reinsurer shall not indemnify the Company for liability beyond circumscribed policy provisions, including but not limited to punitive, exemplary consequential or compensatory damages resulting

from an action of an insured or assignee against the Company." The apparent purpose of that provision is to make clear that liability for insurer bad faith or other torts committed by the insurer are not a part of defendant's reinsurance obligation. Rather, only claims pursuant to the policy itself are subject to reinsurance. It is abundantly clear that the disputed sentence in paragraph 3 merely extends that clarification to also exclude expenses incurred in defending against such extra-contractual claims.

Defendant's argument that the provision means something else defies common sense and proper grammar. The argument set forth in detail at page 6 of defendant's opposition brief and repeated throughout its briefs has as its "major premise" "that loss expenses do not include amounts that fall outside the circumscribed provisions of the policy." This major premise is obviously false. It is not "expenses" that must fall within the policy but rather the "alleged liability." As plaintiff correctly notes, if the intent was to require that the expenses fall within the policy provisions the subject and verb are grammatically mismatched. If the intent was as defendant suggests the sentence would read "Allocated loss expenses shall not include expenses incurred by the Company in regard to any actual or alleged liability that *are* not within the circumscribed provisions of the policy of reinsurance." Use of the verb "is" makes clear that the reference is to the alleged liability—not the expenses.

Viewed from the standpoint of the overall intent of the reinsurance agreement it is unlikely that parties would have intended the effects of the interpretation championed by defendant. Under the reinsurance arrangement defendant assumes 80 percent of the risk of loss and depends on plaintiff to minimize the total cost to defendant by efficiently opposing or settling claims. Plaintiff is, of course, motivated to do so by its retained 20 percent of the risk of loss. Defendant's proposed interpretation would cause a divergence in the parties' interests, to both parties' detriment. Under defendant's proffered interpretation plaintiff would assume 100 percent of the cost in opposing the insured's claims but only 20 percent of any claim payment. Plaintiff's obvious incentive is to prefer claim payment even where opposing the claim would otherwise be in the economic best interest of the parties.

Suppose for example, plaintiff believed that it could defeat an insured's claim in a declaratory judgment action, but would have to incur $50,000 in litigation expenses to do so. Under defendant's view of the reinsurance contract plaintiff would prefer to settle the claim for $200,000, thereby imposing $160,000 in liability on defendant but incurring only $40,000 itself. In contrast, were plaintiff's incentives aligned with defendant's, plaintiff would pursue declaratory relief to defeat the claim, incurring a $10,000 loss for itself and $40,000 for the defendant. It is unreasonable to believe that the parties would choose the former arrangement and it is clear that they did not. Rather, as the plain language of paragraphs 1 and 3 of the general conditions provides, the parties chose to treat liabilities and the expenses incurred to minimize those liabilities in the same manner, thereby fostering economically rational behavior that minimizes the losses of both parties.

Of course the parties could agree, as defendant suggests they did, that plaintiff would bear all declaratory judgment expenses relying on plaintiff's legal obligation to defend claims even though defense is contrary to its economic interest. However, if the parties had agreed to such an arrangement they would surely have employed language more direct than the

last sentence of condition 3. The language they used clearly confirms the obligation of defendant to pay declaratory judgment expenses to establish or avoid the obligation to defend or indemnify under the reinsured policy.

## CONCLUSION

Under the unambiguous terms of the reinsurance agreement defendant is obligated to pay 80 percent of the declaratory judgment defense costs incurred by plaintiff.

There being no dispute as to the amount of the expenses incurred or the portion defendant was obligated to pay in the event of coverage under the reinsurance certificates, plaintiff is entitled to judgment in the amount of 80 percent of those expenses together with prejudgment interest from the date of its entitlement to payment.

## ORDER

· IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED and that defendant's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that judgment be entered in favor of plaintiff against defendant in the amount of $424,849.72 together with prejudgment interest at the rate of 5 percent from September 30, 2001 and costs.